382 Mass. 527 527

Penal Institutions Commissioner for Suffolk County v. Commissioner of Correction.

PENAL INSTITUTIONS COMMISSIONER FOR SUFFOLK COUNTY
*vs.* COMMISSIONER OF CORRECTION.[1]

Suffolk. October 6, 1980. — February 12, 1981.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Practice, Civil*, Declaratory proceeding, Parties. *Jurisdiction*, Declaratory relief. *Constitutional Law*, Standing.

A complaint in an action by the penal institutions commissioner of the county of Suffolk seeking to compel the Commissioner of Correction to transfer substantial numbers of prisoners from the Deer Island house of correction and alleging that such transfers were necessary to enable the city of Boston to go forward with a planned program of renovation of the facilities to be undertaken at a future date failed to state an actual controversy as required for declaratory or equitable relief under G. L. c. 231A or c. 214, § 1. [530-532]

In an action by the penal institutions commissioner of the county of Suffolk seeking to compel the Commissioner of Correction to transfer substantial numbers of prisoners from the Deer Island house of correction, the penal commissioner lacked standing to assert a claim that the conditions at Deer Island were such as to deprive prisoners incarcerated there of rights guaranteed by statute and various provisions of the State and Federal Constitutions. [532-533]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 21, 1980.

The case was heard by *Wilkins*, J.

*John L. Keefe*, Assistant Corporation Counsel, for the plaintiff.

*Linda M. Irvin*, Assistant Attorney General, for the defendant.

---

[1] We note that since the inception of this action, William T. Hogan, named by these pleadings as the Commissioner of Correction, has left that office. His successor is automatically substituted as a party. Mass. R. Civ. P. 25 (d) (1), 365 Mass. 771 (1974).

QUIRICO, J. This appeal is from an order of a single justice of this court dismissing an action for declaratory and injunctive relief brought by the penal institutions commissioner for Suffolk County (penal commissioner),[2] and naming as defendants the Chief Administrative Justice of the Trial Court and the Commissioner of Correction for the Commonwealth (commissioner of correction). By his complaint, the penal commissioner sought an order enjoining any new commitments of prisoners by the trial courts of the Commonwealth to the Suffolk County house of correction at Deer Island (Deer Island), and compelling the commissioner of correction to transfer, pursuant to the power granted in G. L. c. 124, § 1 (g),[3] substantial numbers of prisoners from that institution. These measures were alleged to be necessary to alleviate currently overcrowded conditions at Deer Island and to enable the city of Boston (city) to go forward with a planned program of renovation of the facilities there.

The single justice, after a hearing, dismissed the action for failure to state a claim cognizable under either our powers of general superintendence of the lower courts, G. L. c. 211, § 3, or under the declaratory judgment statute, G. L. c. 231A. The penal commissioner appeals the dismissal of the action only in so far as it sought relief against the commissioner of correction. We affirm.

We summarize the case for relief as stated in the complaint, various affidavits filed with it, and the penal com-

---

[2] The penal institutions commissioner is the county officer charged with the administration of the house of correction for the county of Suffolk at Deer Island. See St. 1928, c. 389, §§ 1, 2; City of Boston Code, Statutes, tit. 12, § 352 (1975).

[3] The relevant portion of G. L. c. 124, § 1 (g), as appearing in St. 1972, c. 777, § 5, reads as follows: "In addition to exercising the powers and performing the duties which are otherwise given him by law, the commissioner of correction, . . . shall: . . . (g) determine at the time of commitment, and from time to time thereafter, the custody requirements and program needs of each person committed to the custody of the department and assign or transfer such persons to appropriate facilities and programs."

missioner's brief on appeal.[4]  The penal commissioner alleges that as a result of various defects or deficiencies in the several buildings now used to house prisoners at Deer Island, prisoners are held there under conditions which are overcrowded in violation of present Department of Correction regulations, see 103 Code Mass. Regs. 900, et seq., or are confined in buildings never intended to house prisoners. The penal commissioner further alleges that if the assignment of prisoners to Deer Island continues unabated, conditions there will become of sufficient severity to "constitute cruel and unusual punishment and, therefore, violate the rights of inmates under the Eighth and Fourteenth Amendments to the United States Constitution, under Part 1, article 1 and Part 1, article 26 of the Massachusetts Constitution, under 42 U.S.C. § 1983 [1976], and under G. L. c. 12, §§ 11H, 11I, as amended by St. 1979, c. 801."

An affidavit prepared by Daniel Hurley, the assistant director of the public facilities department of the city of Boston, and submitted with the complaint, summarizes an ambitious program for the repair of and alterations to the facilities at Deer Island.  The affidavit lists seventeen separate projects.  Of these, it is alleged that eight would require the transfer of significant numbers of inmates for their completion.  None of these eight is presently underway, and in only a single case has the city progressed to the point of publicly soliciting bids.[5]

As originally framed, the complaint pleaded jurisdiction only under our powers of general superintendence.  G. L.

---

[4] As will become evident, the argument on appeal reflects a thorough restructuring of the case as it was originally stated.

[5] The project presently "out to contract" involves the repair or replacement of cell door security locks at one building; the affiant states that prior to its completion "some moving of individual inmates during the construction phase" will be required.  Of the seven projects remaining, five are said to be in the "pre-contract stage," and two in the "pre-design stage."  Although these terms are undefined, we infer that arriving at a design, developing a specific contract, soliciting bids, and executing a construction contract are all prerequisites to any actual construction at Deer Island.

c. 211, § 3. On appeal, this jurisdictional ground has been abandoned; the penal commissioner now argues that his complaint should be read to present two distinct claims for relief, both cognizable by this court. First, he claims that his allegation that a transfer of prisoners is necessitated by the planned program of repairs is sufficient in itself to state a claim for declaratory and equitable relief. See G. L. c. 231A; G. L. c. 214, § 1. In support of this argument, he cites his duty to administer the facilities at Deer Island in a manner not inconsistent with the "rules made by the commissioner of correction under section 1 of chapter 124 of the General Laws or otherwise repugnant to law . . . ." City of Boston Code, Statutes, tit. 12, § 352 (1975). He further points to G. L. c. 268, § 20, which provides for criminal sanctions should the penal commissioner wilfully refuse to receive a prisoner into his custody. In essence, he argues that he can comply with his duties and avoid criminal sanctions only if the commissioner of correction is compelled to transfer prisoners from Deer Island as required by the exigencies of the renovation program. He further argues that his allegation that prisoners at Deer Island are presently being deprived of statutory and constitutional rights is sufficient to support this action against the commissioner of correction, without regard to the program of renovations.

This attempt to salvage by appeal a fundamentally deficient complaint fails, essentially for the reasons stated by the single justice. As to the claim that relief against the commissioner of correction is required to facilitate repairs at Deer Island, the penal commissioner's pleadings fail to state an actual controversy, a necessary prerequisite to such relief. Equally clearly, the penal commissioner lacks standing to assert any present violation of inmate rights at Deer Island. Because the principles governing this case have been fully and recently explored, we state them only summarily below.

1. *The "actual controversy" requirement.* The statute governing our procedure for declaratory judgments expressly requires that the pleadings set forth specifically some ac-

tual controversy. G. L. c. 231A, §§ 1, 9. "Such proceedings are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties." *Massachusetts Ass'n of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292 (1977), and cases cited. Conclusory allegations as to official duties or potential future conflicts will not do; "[i]t requires clear allegations of specific facts to state a case for any relief, or to show that any real controversy exists, based upon abuse of . . . official discretion." *Poremba* v. *Springfield*, 354 Mass. 432, 434 (1968). *Saraceno* v. *Peabody*, 361 Mass. 696, 702 (1972). *Greenberg* v. *Assessors of Cambridge*, 360 Mass. 418, 420-423 (1971).

Here, after giving the penal commissioner the benefit of every doubt, we are left with a claim that at some point in the future, renovations to Deer Island may require that some unspecified number of inmates be temporarily transferred to another facility, and that the commissioner of correction has the power to effect such transfers. Counsel for the plaintiff conceded at oral argument that no attempt has as yet been made to discuss with the commissioner of correction an orderly administrative solution to whatever problems may in the future arise. In effect, the penal commissioner seeks in advance of any actual dispute an order which would transfer to him the discretionary power of transfer lodged by statute in the commissioner of correction.

An order in such a form would clearly be beyond either the powers granted in G. L. c. 231A or our general equity powers under G. L. c. 214, § 1. Should a controversy as to prisoner relocation arise once the renovations to Deer Island are under way, judicial resolution remains open to these parties as a final resort. We emphasize, however, that even in the face of an actual controversy, we will not lightly intrude into areas requiring the continuing superintendence of the management or rehabilitation of properties, although life or health interests may be implicated. We must at a minimum be convinced that there are not "more effective,

albeit less heroic, procedures . . . available" before judicial intervention in this area can be justified. *West Broadway Task Force, Inc.* v. *Commissioner of Dept. of Community Affairs*, 363 Mass. 745, 751-752 (1973).

2. *Standing requirement.* Stripped of the allegations regarding the renovations program, the plaintiff's pleadings state only that the conditions at Deer Island are currently such as to deprive prisoners incarcerated there of rights guaranteed either by statute or by various provisions of the State and Federal Constitutions. Even assuming that such conditions exist, we agree with the single justice that the plaintiff lacks standing to assert them as a basis for relief against this defendant.

"A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Massachusetts Ass'n of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins., supra* at 293, and cases cited. See L.H. Tribe, American Constitutional Law § 3-22, 97-98 (1978) ("As a prudential matter, affected interests ordinarily must fall within the 'zone of interests' arguably protected by the relevant statute or constitutional guarantee. . . . [I]t is not enough that the plaintiff be injured by some act or omission of the defendant; the defendant must additionally have violated some duty owed to the plaintiff"). Here, the penal commissioner fails to allege a breach of any duty owed to him by the commissioner of correction. The constitutional and statutory rights on which he depends clearly belong to the inmates in his care. If those rights are presently being infringed, as the penal commissioner indicates, the suggestion that they may be vindicated by the official most directly responsible for preventing such infringements is simply perverse.

The penal commissioner's invocation of the standing doctrine enunciated in *Brewer* v. *Hoxie School Dist. No. 46*, 238 F.2d 91 (8th Cir. 1956), is unavailing. There the court allowed school officials to seek equitable relief against persons who joined in a campaign of violent resistance to the

officials' efforts to desegregate the schools in their care. *Brewer* thus presented the common element underlying all assertions of "associational" standing:  a clear identity of interests between the person or persons who possess a right and the person or entity who seeks to vindicate that right. See *Massachusetts Ass'n of Independent Ins. Agents & Brokers, Inc., supra* at 296-298.  It is that identity of interests which is fundamentally lacking here.  The order of the single justice dismissing this action is affirmed.

*So ordered.*