HSBC Bank USA, N.A., trustee,[1] *vs.* Jodi B. Matt.

Suffolk. September 6, 2012. - January 14, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Mortgage,* Foreclosure. *Practice, Civil,* Standing. *Federal Servicemembers Civil Relief Act. Massachusetts Soldiers' and Sailors' Civil Relief Act.*

Discussion of the statutory framework of the Federal Servicemembers Civil Relief Act, which provides for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service, and of the jurisdictional limitations of the Massachusetts Soldiers' and Sailors' Civil Relief Act. [194-197]

A party who conceded that she was not entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act (act) could not appear or be heard in a servicemember proceeding brought under that act in the Land Court, even with regard to the threshold issue of the standing of the party bringing the action. [198-199]

A bank that held a right to purchase a mortgage did not have standing to bring a servicemember proceeding in the Land Court under the Soldiers' and Sailors' Civil Relief Act, where standing to bring such a proceeding is limited to plaintiffs who present such evidence as may be necessary and appropriate in the circumstances reasonably to satisfy the judge as to their status as mortgagees or agents thereof. [199-204]

Civil action commenced in the Land Court Department on January 27, 2010.

The case was heard by *Keith C. Long*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Glenn F. Russell, Jr.,* for the defendant.

*Nathalie K. Salomon* for the plaintiff.

The following submitted briefs for amici curiae:

*Robert P. Marley,* pro se.

*Paul J. Mulligan* for Real Estate Bar Association for Massachusetts, Inc., & another.

*Grace C. Ross,* pro se.

---

[1] For the ACE Securities Corp. Home Equity Loan Trust Series 2005-HE4 Asset Backed Pass-Through Certificates.

LENK, J. The plaintiff, HSBC Bank USA, N.A. (HSBC), claiming to be the holder of a mortgage given by the defendant, Jodi B. Matt, filed a complaint in equity in the Land Court, under the Massachusetts Soldiers' and Sailors' Civil Relief Act (Massachusetts act or act), to determine if Matt was entitled to foreclosure protections under the Federal Servicemembers Civil Relief Act (Federal SCRA or SCRA), 50 U.S.C. app. §§ 501 et seq. (2006). The Massachusetts act, which provides a procedural framework for ascertaining whether mortgagors are entitled to protections under the SCRA, expressly permits only those defendants who assert entitlement to such rights to appear in equitable proceedings brought pursuant to the SCRA (servicemember proceedings). See St. 1943, c. 57 (1943), as amended through St. 1998, c. 142.

While conceding that she is not entitled to protection under the SCRA, Matt nonetheless moved to dismiss the complaint on the ground that HSBC lacked standing to bring a servicemember proceeding because it was not the clear holder of either her note or her mortgage. After ordering discovery, a Land Court judge denied Matt's motion, concluding that HSBC had standing by virtue of its right to purchase Matt's mortgage.

Because Matt was not entitled to appear or be heard at the servicemember proceeding, the court should not have accepted or entertained Matt's filings. Nonetheless, the judge having undertaken to examine HSBC's standing, the question before us is whether he properly applied the correct standard in concluding that HSBC had established standing. Because standing to bring a servicemember proceeding is limited to plaintiffs who satisfactorily establish that they are mortgagees or agents thereof, we conclude that the judge's determination of HSBC's standing on the basis of a different standard is incorrect.

1. *Statutory framework.* The Federal SCRA, passed in 1940, is modeled after the Soldiers' and Sailors' Civil Relief Act of 1918, which in turn was based on State civil relief acts passed during the American Civil War. See Folk, Tolling of Statutes of Limitations Under Section 205 of the Soldiers' and Sailors' Civil Relief Act, 102 Mil. L. Rev. 157, 159 (1983). In its current form, and consistent with its history, the SCRA "provide[s] for the temporary suspension of judicial and administrative

proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. app. § 502. Among the protections granted to service-members, the SCRA provides that a "sale, foreclosure, or seizure of property for a breach of an obligation" conducted while a party is in the military[2] "shall not be valid . . . except . . . (1) upon a court order granted before such sale, foreclosure, or seizure; or (2) if made pursuant to an agreement [between the parties]." 50 U.S.C. app. § 533(c).

In Massachusetts, a mortgagee[3] seeking to assure compliance with the SCRA prior to commencing foreclosure proceedings could bring an action in equity to obtain an appropriate court order.[4] See *Lynn Inst. for Sav.* v. *Taff,* 314 Mass. 380, 386 (1943); *Great Barrington Sav. Bank* v. *Brown,* 239 Mass. 546, 547 (1921). In 1941, the Legislature, concerned that servicemembers were not receiving adequate notice of servicemember proceed-ings, passed the Massachusetts act, which set forth certain procedural requirements for such equitable actions.[5] St. 1941, c. 25, preamble. The act was thereafter amended on multiple

---

[2]The protections of the Federal Servicemembers Civil Relief Act (Federal SCRA or SCRA), 50 U.S.C. app. §§ 501 et seq. (2006), apply only if the ser-vicemember entered into the obligation prior to entry into the military. 50 U.S.C. app. § 533(a). Servicemembers enjoy the protections of the SCRA while they are in active military service as defined in 50 U.S.C. app. § 511(2) and for a designated period of time thereafter. 50 U.S.C. app. § 533(a), amended by Pub. L. 112-154, 112th Cong., 2d Sess., 126 Stat. 1165 (2012) (temporarily extending protection to one year after the period of military service).

[3]While the Federal SCRA and the Massachusetts Soldiers' and Sailors' Civil Relief Act (Massachusetts act or act) apply to mortgages, trust deeds, and securities in the nature of a mortgage on real or personal property, 50 U.S.C. app. § 533(a); St. 1943, c. 57, § 1, as amended through St. 1998, c. 142, we use the terminology of mortgages as encompassing all of the foregoing security mechanisms.

[4]A proceeding brought pursuant to the SCRA (servicemember proceeding) "is brought because of the SCRA, but not under its authority. It is brought under the general jurisdiction given the equity courts of the Commonwealth . . . ." *Great Barrington Sav. Bank* v. *Brown,* 239 Mass. 546, 547 (1921) (interpreting 1918 version of SCRA, which is identical to current SCRA in all material respects as to foreclosure protections). Further, the Massachusetts act "conferred no jurisdiction of the subject matter [of servicemember proceed-ings] upon the courts of equity of the Commonwealth that they did not already possess by virtue of the special circumstance of [the SCRA]." *Lynn Inst. for Sav.* v. *Taff,* 314 Mass. 380, 385 (1943).

[5]The Legislature repealed the 1941 act in 1943, replacing it with the not

occasions to provide additional procedural and substantive limitations. See St. 1943, c. 57.

Prominent among these are the jurisdictional limitations, which provide:

> "In proceedings under this section, *no person* who is not a record owner of the equity of redemption in the mortgaged property and *who is not entitled to the benefit of the [SCRA] . . . shall be entitled to appear or be heard in such proceeding,* except on behalf of a person so entitled, or unless an affidavit by the claimant, . . . stating that he is entitled to the benefits of [the SCRA], is filed with the appearances. *Such proceedings shall be limited to the issues of the existence of such persons and their rights if any.*" (Emphasis added.)

St. 1943, c. 57, § 1, as amended through St. 1990, c. 496, § 1. In concert with the limited subject matter of the proceeding, the act now limits the relief granted at proceedings where a defendant is not entitled to the benefits of the SCRA to a "decree by the court that no person is then subject to or is entitled to the benefits of the [SCRA], [which] shall forever bar the persons named in the bill or complaint from complaining that such foreclosure or seizure is invalid under said act."[6] *Id.*

Servicemember proceedings "occur independently of the actual foreclosure itself and of any judicial proceedings determinative of the general validity of the foreclosure." *Beaton v. Land Court,* 367 Mass. 385, 390, appeal dismissed, 423 U.S. 806 (1975) (*Beaton*). See *Akar v. Federal Nat'l Mtge. Ass'n,* 845 F. Supp. 2d 381, 396-397 (D. Mass. 2012) ("the Land Court [servicemember] action [does] not mark the commencement of foreclosure proceedings"). "If a foreclosure were otherwise properly made, failure to comply with the [SCRA] would not render the foreclosure invalid as to anyone not entitled to the protection of that act." *Beaton, supra* at 390. Failure to

---

dissimilar 1943 act, which, as subsequently amended, is the current Massachusetts act. Compare St. 1943, c. 57, with St. 1941, c. 25.

[6]The narrow decree dictated by the current Massachusetts act is a departure from the more broadly worded decree permissible under prior versions of the act, which "approved" foreclosures "done pursuant to authority granted in such proceedings." See St. 1943, c. 57.

bring a servicemember proceeding, however, will leave the title vulnerable to a challenge that the foreclosure sale was defective due to the possibility that it violated a mortgagor's rights under the SCRA. See *id.* Thus, a servicemember proceeding is neither a part of nor necessary to the foreclosure process; it simply ensures that a foreclosure will not be rendered invalid for failure to provide the protections of the SCRA to anyone so entitled, an assurance that also could be obtained at a postforeclosure action to quiet title under G. L. c. 240, § 6. See *Silva* v. *Massachusetts*, 351 Fed. Appx. 450, 452 n.2 (1st Cir. 2009).

2. *Background and prior proceedings.* HSBC, the trustee for ACE Securities Corp. Home Equity Loan Trust Series 2005-HE4 Asset Backed Pass-Through Certificates (trust), asserted in its servicemember complaint that it was "the assignee and holder of a mortgage" given by Matt. HSBC additionally submitted a mortgagee's affidavit,[7] signed by Countrywide Home Loans Servicing, LP (Countrywide), a servicer of loans contained in the trust, in which Countrywide averred that it was "authorized to act by and on behalf of either of the Mortgagee or one holding under the Mortgagee" and that it had provided notice to Matt of her right to cure a default in payment on her mortgage, as required by G. L. c. 244, § 35A. Matt conceded that she was not entitled to the protections of the SCRA, yet nevertheless she moved to dismiss, claiming that HSBC did not have standing to bring the servicemember complaint because it had not shown it was the holder of either her mortgage or her note.

On the basis of supplemental discovery submissions ordered following a hearing on Matt's motion, the judge denied the motion, concluding that, even though "it is not clear from the record that HSBC is the current holder of either the note or the mortgage," HSBC nonetheless had standing under the act because

---

[7]The Land Court requires all parties filing a servicemember complaint to submit a mortgagee's affidavit. See Rule 12 of the Rules of the Land Court, Mass. Ann. Laws Court Rules 1167 (LexisNexis 2011-2012). In the form affidavit required by the Land Court, plaintiffs must attest to being (1) the mortgagee, (2) one who holds under the mortgagee, or (3) one who is authorized to act by and on behalf of either the mortgagee or one holding under the mortgagee. Plaintiffs must also affirm that they have provided the mortgagor with notice of their right to cure a default, as required by G. L. c. 244, § 35A. That statute, in turn, provides that the right to cure notice must be filed by the mortgagee, or anyone holding thereunder. G. L. c. 244, § 35A (*j*).

it had "a contractual right to *become* [the] holder" of Matt's mortgage. The judge determined that a plaintiff in a service-member proceeding "need not be the current holder of the note or the mortgage to have standing . . . . [I]t is sufficient if the plaintiff satisfies the general requirements of standing." The judge reasoned that a party with a contractual right to purchase the mortgage has a sufficient interest in the servicemember proceeding because the proceeding "affects the present collect-ability of that loan . . . and thus the present value of the loan."

Matt's motion for reconsideration was denied, as was her petition for interlocutory review pursuant to G. L. c. 231, § 118, and her ensuing appeal of that denial. Thereafter, a judgment entered "that the plaintiff be authorized and empower[ed] to make an entry and to sell the property covered by the mortgage as set forth in this complaint in accordance with the powers contained in said mortgage." Matt appealed from this judg-ment,[8] and we transferred the case to this court on our own motion.

3. *Discussion.* We review de novo the judge's determination of the appropriate standard for standing in servicemember pro-ceedings, and his conclusion that HSBC has met this standard. See *Indeck Me. Energy, LLC* v. *Commissioner of Energy Re-sources*, 454 Mass. 511, 516 (2009) ("Because the Superior Court judge decided the standing issue as a matter of law, we review that legal conclusion de novo").

As an initial matter, we consider whether Matt was correctly permitted to appear in this action and to lodge a challenge to HSBC's standing. The Massachusetts act, as stated, provides that only those defendants who are entitled to the benefits of the SCRA, or those acting on their behalf, "shall be entitled to ap-pear or be heard in [a servicemember] proceeding." St. 1943, c. 57, § 1, as amended through St. 1990, c. 496, § 1. In *Beaton, supra* at 388, we held that "the Judges [of the Land Court] acted properly in denying [a] motion to compel the recorder to accept [an] answer" filed by the defendants where "the answer . . . [did] not assert that the petitioners or any other concerned parties [were] entitled to the protection of the

---

[8]Matt's brief states incorrectly that this is an appeal from the order denying Matt's motion to dismiss.

[SCRA]." See *Boston Five Cents Sav. Bank* v. *Johnson*, 3 Mass. App. Ct. 790, 790 (1975) (defendants' appearance and answer properly struck where record did not indicate they were entitled to benefits under SCRA). Because Matt did not assert in her responsive pleading that she was entitled to the protections of the SCRA, the court erred in accepting her filings and allowing her to appear and be heard.

The rationale for this limitation lies in the extremely narrow subject matter of the proceeding itself. Simply put, because a servicemember proceeding cannot affect the rights or interests of nonservicemembers, nonservicemembers have no interest in the proceeding. See *Beaton, supra* at 390-391. "[C]ourts are not established to enable parties to litigate matters in which they have no interest affecting their liberty, rights or property." See *Razin* v. *Razin*, 332 Mass. 754, 754 (1955), quoting *Hogarth-Swann* v. *Weed*, 274 Mass. 125, 132 (1931). To allow challenges by nonservicemembers, even to threshold issues such as standing, would contravene the clear statutory language and the legislative intent to create a uniquely narrow procedure.

Notwithstanding a nonservicemember's inability under the act to raise the issue, however, a plaintiff must establish standing in order for a court to decide the merits of a dispute or claim. See *Beard Motors, Inc.* v. *Toyota Motor Distribs., Inc.*, 395 Mass. 428, 432 (1985). Because standing is a question of subject matter jurisdiction, *Indeck Me. Energy, LLC* v. *Commissioner of Energy Resources, supra* at 516, it must be established irrespective of whether it is challenged by an opposing party. See *Nature Church* v. *Assessors of Belchertown*, 384 Mass. 811, 812 (1981) ("Courts . . . have both the power and the obligation to resolve problems of subject matter jurisdiction whenever they become apparent, regardless whether the issue is raised by the parties"). See also Mass. R. Civ. P. 12 (h) (3), 365 Mass. 754 (1974) ("Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").[9]

Therefore, a plaintiff must establish standing in servicemem-

---

[9]Although the rules of civil procedure do not apply to servicemember proceedings, Mass. R. Civ. P. 81 (a) (1), as amended, 450 Mass. 1405 (2008), statutory actions to which the rules do not apply "shall follow the course of

ber proceedings even if a defendant is statutorily prohibited from appearing. See *Bevilacqua* v. *Rodriquez*, 460 Mass. 762, 763-764 (2011). If an issue of standing becomes apparent in such cases, it falls to the judge to inquire into the plaintiff's standing sua sponte. See *Nature Church* v. *Assessors of Belchertown, supra.*

We turn next to whether a plaintiff must be a mortgagee[10] to establish standing in a servicemember proceeding, or whether, as the judge determined, standing may be established upon a showing that a plaintiff holds a right to purchase a mortgage. "To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury." *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court*, 448 Mass. 15, 21 (2006), quoting *Slama* v. *Attorney Gen.*, 384 Mass. 620, 624 (1981) "[T]he injury alleged must fall 'within the area of concern of the statute or regulatory scheme under which the injurious action has occurred.' " *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court, supra* at 21-22, quoting *Gunther* v. *Commissioner of Ins.*, 427 Mass. 319, 323 (1998). A plaintiff must have "a definite interest in the matters in contention in the sense that his rights will be significantly affected by a resolution of the contested point." *Bonan* v. *Boston*, 398 Mass. 315, 320 (1986). "We decide whether standing exists by examining several considerations, including the language of the statute [and] the Legislature's intent and purpose in enacting [it] . . . ." *Massachusetts State Police Commissioned Officers Ass'n* v. *Commonwealth*, 462 Mass. 219, 223 (2012), quoting *Indeck Me. Energy, LLC* v. *Commissioner of Energy Resources, supra* at 517-518.

---

common law, as near to these rules as may be," unless otherwise governed by the statute. Mass. R. Civ. P. 81 (a) (3), as appearing in 423 Mass. 1412 (1996). See Reporters' Notes (1973) to Mass. R. Civ. P. 81 (a) (1), Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 1270 (LexisNexis 2011-2012) (for proceedings not governed by the rules, rule 81 [a] "commands adherence to these rules, unless statutorily contradicted"). Therefore, to the extent that they comport with the act, we apply common-law principles of standing in servicemember proceedings.

[10]We use the term "mortgagee" to mean the person or entity who has the present authority to foreclose on the security instrument at issue. In the context of mortgages, this refers to "the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." *Eaton* v. *Federal Nat'l Mtge. Ass'n*, 462 Mass. 569, 571 (2012).

A servicemember proceeding is a proceeding in equity brought because of the Federal SCRA and subject to the procedural and subject matter limitations contained in the Massachusetts act. See *Lynn Inst. for Sav.* v. *Taff*, 314 Mass. 380, 385 (1943). We thus first consider the "area of concern" of the Federal SCRA and the Massachusetts act. The stated purpose of the SCRA is "to provide for, strengthen, and expedite the national defense [through the] temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. app. § 502. The SCRA invalidates a foreclosure conducted during a servicemember's period of military service unless done pursuant to a court order or agreement between the parties. 50 U.S.C. app. § 533. Because nonmortgagees cannot, by law, take actions to foreclose that would trigger the protections accorded servicemembers by the SCRA, extending standing in servicemember proceedings to nonmortgagees would not further the stated purpose of the SCRA. See *Eaton* v. *Federal Nat'l Mtge. Ass'n*, 462 Mass. 569, 571 (2012) (party other than mortgagee or agent of mortgagee cannot validly foreclose on mortgage).

The purpose of this portion of the SCRA, however, is "not only to protect [servicemember mortgagors], but also to afford relief to mortgagees, who might suffer great loss if compelled to await the termination of the period of military service of any person interested who might be so engaged, before exercising the power of sale." *Lynn Inst. for Sav.* v. *Taff*, supra at 386. Because nonmortgagees are not, by law, in a position to foreclose on a mortgage, see *Eaton* v. *Federal Nat'l Mtge. Ass'n*, supra, they could not suffer the loss that the servicemember proceeding redresses. As to foreclosures involving nonservicemember mortgagors, the act contemplates a benefit to mortgagees through the issuance of a judicial decree that such a mortgagor is not entitled to the protections of the SCRA. See *Beaton*, *supra*. The decree protects the mortgagee by ensuring that a foreclosure will not subsequently be rendered invalid for failure to provide the protections of the SCRA to anyone so entitled. *Id.* at 390. Insofar as nonmortgagees are unable to foreclose on a mortgage, the decree affords them no protections.

Those who, like HSBC, are said to have an option to become the holder of a mortgage do not have the present authority to foreclose. See *Eaton* v. *Federal Nat'l Mtge. Ass'n, supra.* Their interest in ascertaining whether the mortgagor is protected under the SCRA is limited to any impact the mortgagor's service-member status may have upon the present value of the invest-ment they have under consideration. Such an interest does not give rise to a definite injury "within the area of concern" of the SCRA, see *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court, supra* at 21-22, nor will a judicial resolution under the act "significantly affect[]" their rights. See *Bonan* v. *Boston, supra.*

Turning to the Massachusetts act, it is clear from its language and history that nonmortgagees likewise do not fall within the act's "area of concern." The act sets forth a procedural and substantive framework for servicemember proceedings in order to implement the SCRA. St. 1943, c. 57, § 1. Section 1 of the act, which imposes a notice requirement, limits the act to proceed-ings brought "in equity for authority to foreclose a mortgage . . . because of an Act of Congress known as the [SCRA]." *Id.* The statutory notice form provided thereafter begins:

> "[Plaintiff,] *claiming to be the holder of a mortgage* [or] trust deed [or] security in the nature of a mortgage . . . , has filed with said court a bill in equity for authority *to foreclose said mortgage* [or] trust deed [or] security in the nature of a mortgage . . ." (emphasis added).

*Id.*[11] While largely identical to the notice set forth in the repealed 1941 version of the act, the current notice form contains ad-ditional language identifying the plaintiff as one "claiming to be the holder of a mortgage," therefore reflecting the legislative

---

[11]As previously noted, the current version of the act limits the relief that may be granted in a servicemember proceeding to a decree "that no person is then subject to or entitled to the benefits of the [SCRA], [which] shall forever bar the persons named in the . . . complaint from complaining that such foreclosure . . . is invalid under said act." St. 1943, c. 57, § 1, as amended through St. 1990, c. 496, § 1. Given this, we construe statutory references to proceedings brought in equity "for authority to foreclose a mortgage" to mean no more than that an ensuing foreclosure brought by or on behalf of the mortgagee would not violate any rights a defendant might otherwise have under the SCRA.

intent, see *Charles C.* v. *Commonwealth*, 415 Mass. 58, 67 n.5 (1993) (amendment to statute properly may be considered as indicative of legislative intent), that only mortgagees bring such complaints. Compare St. 1943, c. 57, with St. 1941, c. 25.

Finally, the preamble to the initial version of the Massachusetts act states that the servicemember procedure "should immediately be available for such mortgagees, mortgagors and others[12] so that all future foreclosures in which they are interested may be conducted in accordance with the [SCRA]." St. 1943, c. 57, preamble. From its inception, then, the act contemplated that only mortgagees would have the requisite standing to bring a servicemember complaint. See *Brennan* v. *The Governor*, 405 Mass. 390, 395 (1989) ("Statements regarding the scope or purpose of an act that appear in its preamble may aid the construction of doubtful clauses . . .").

In light of the foregoing, we conclude that only mortgagees or those acting on behalf of mortgagees[13] have standing to bring servicemember proceedings.[14] In the present case, the judge determined that HSBC had standing on the sole basis of its purported right to purchase Matt's mortgage.[15] Given the incorrect standard employed in making this determination, neither it nor the ensuing judgment may stand.[16]

Going forward, to establish standing in servicemember

[12]The term "others," viewed in context, refers to preceding language in the preamble, viz., "others interested in property subject to mortgage who are in the military service." Thus, "others" would include only potential defendants in servicemember proceedings. St. 1943, c. 57, preamble.

[13]The act adopts the principles of agency for mortgagors, and there is nothing to suggest the same principles would not apply for mortgagees. St. 1943, c. 57. See *Eaton* v. *Federal Nat'l Mtge. Ass'n, supra* at 586 ("There is no applicable statutory language suggesting that the Legislature intended to proscribe application of general agency principles in the context of mortgage foreclosure sales").

[14]As a practical matter, the Rules of the Land Court already are intended to limit servicemember proceedings to purported mortgagees or their agents. See note 7, *supra*.

[15]We recognize that HSBC claims to be the actual holder of Matt's mortgage, not simply to have a right to purchase it. Because the judge did not base his standing determination on this assertion, however, the matter is better addressed upon remand.

[16]The judgment entered exceeded the limited statutory relief prescribed by the act. As noted, in 1990, the Legislature removed from the act any authority that may previously have been provided for courts to "approve[]" foreclosures

proceedings, plaintiffs must present such evidence as may be necessary and appropriate in the circumstances reasonably to satisfy the judge as to their status as mortgagees or agents thereof.[17] We emphasize, however, that servicemember proceedings, where nonservicemember defendants may not appear and be heard, are not determinative of any issue beyond the extent of such defendants' rights under the SCRA, if any. See St. 1943, c. 57. See also *Beaton, supra* at 390-391. The servicemember proceeding is not part of the foreclosure process. Accordingly, in any separate action challenging a foreclosure or a mortgagee's right to foreclose,[18] the fact that the purported mortgagee was determined to have standing to maintain a servicemember proceeding does not itself in any way establish the purported mortgagee's status as such in that separate action.

4. *Conclusion.* The judgment for entry and sale is vacated, and the matter is remanded to the Land Court for further proceedings consistent with this opinion.

*So ordered.*

---

as part of a servicemember proceeding. St. 1990, c. 496. Pursuant to the current language of the act, upon a determination that a mortgagor is not entitled to the protections of the SCRA, a judge is to enter a decree declaring only as much. See St. 1943, c. 57. Here, the judgment ordered that HSBC "be authorized and empower[ed] to make an entry and to sell the property covered by the mortgage," plainly exceeding the prescribed limited statutory relief.

[17]The judge may, but need not, consider an affidavit filed by a plaintiff pursuant to the Rules of the Land Court and G. L. c. 244, § 35A, as sufficient to meet this burden.

[18]The record indicates that Matt has filed such an action in the United States District Court for the District of Massachusetts, challenging HSBC's authority to foreclose on her mortgage.